**Eric SCHLIER, Plaintiff,**

v.

**MILWAUKEE ELECTRICAL TOOL CORP., Defendant.**

Civ. A. No. 92–5192.

United States District Court, E.D. Pennsylvania.

Oct. 29, 1993.

Mark C. Van Horn, Allentown, PA, for plaintiff.

Richard W. Hollstein, Clark, Ladner, Fortenbaugh & Young, Philadelphia, PA, for defendant.

### MEMORANDUM—ORDER

ROBRENO, District Judge.

Presently before the Court is defendant's Motion for Judgment as a Matter of Law pursuant to Federal Rule of Civil Procedure 50(a). Defendant made its Motion at the conclusion of plaintiff's case-in-chief.

## I. DISCUSSION

### A. *Standard for Rule 50(a) Motions*

Federal Rule of Civil Procedure 50(a)(1) provides that "[i]f during a trial by jury a party has been fully heard with respect to an issue and there is no legally sufficient evidentiary basis for a reasonable jury to have found for that party with respect to that issue, the court may grant a motion for judgment as a matter of law against that party on any claim, counterclaim, cross-claim, or third party claim that cannot under the controlling law be maintained without a favorable find-

ing on that issue." Fed.R.Civ.P. 50(a)(1). As the Third Circuit earlier this year explained, a motion for judgment as a matter of law may be granted "only if, viewing the evidence in the light most favorable to [the non-moving party] and giving [the non-moving party] the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury could reasonably find liability." *Wittekamp v. Gulf & Western, Inc.,* 991 F.2d 1137, 1141 (3d Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 309, —— L.Ed.2d —— (U.S. Oct. 12, 1993). In this diversity case, Pennsylvania substantive law applies. Applying the Rule 50(a) standard and for the reasons that follow,[1] defendant's Motion will be granted.

### B. *Evidence Introduced During Plaintiff's Case-in-Chief*

Plaintiff claims to have sustained an injury to his leg on June 21, 1989 while operating a circular power saw in the course of his employment. He is proceeding against the manufacturer of the saw on three theories of liability: strict liability, negligence, and breach of warranty. After summarizing the evidence introduced during plaintiff's case-in-chief, I shall discuss each of plaintiff's claims *seriatim.*

Plaintiff's entire case-in-chief consisted of the testimony of plaintiff himself, plus the introduction of a photograph of the circular power saw that plaintiff claims was defective, a photograph of his leg shortly after surgical stitches were removed, his medical records, and a summary sheet showing the amounts of his lost wages and medical expenses resulting from his injury. The defendant stipulated to the amounts of lost wages and medical expenses.

Plaintiff testified that he was familiar with the use of a power saw like the one at issue and he had used one at home since about age fourteen. He had received some training with similar tools during wood shop and also to a lesser extent during metal shop at

---

1. This decision was initially announced from the bench in a slightly edited version on the second day of trial.

school. At the time of the accident, he was nineteen years of age.

From about the beginning of 1989 through the date of plaintiff's injury on or about June 21, 1989, plaintiff was employed by Johnson Fabricators, during which time he used the saw about four or five times a week. When the accident occurred, he was using the saw to cut long wooden boards into three-foot long pieces for disposal. To accomplish this task, plaintiff sat the boards on a forklift with the section of the board to be cut extended over the side of the fork to the right of plaintiff. The boards were approximately two feet off the ground. He kneeled on his left knee as he cut the boards, holding the board being cut with his left hand and the circular power saw with his right hand.

As plaintiff sawed the wood in this manner on the day of the accident, he noticed that the saw was buckling and that a couple of teeth were missing from the blade. He asked his supervisor for a new blade, but was told there was none available. Instead, he got another used blade to replace the one that was on the saw, and replaced it before resuming the job. Although the saw continued to buckle when he resumed its use, plaintiff did not stop for that reason. Instead, plaintiff experienced a powerful "kick-back" in the nature of a sudden reversal of direction of the tool towards the operator. The saw struck plaintiff in the right leg, creating a laceration above plaintiff's knee and extending up much of the length of his thigh.

Plaintiff explained that, in his experience, kickbacks do occur in the course of using this type of power saw, but that he had never experienced one as powerful as the one causing the accident. The saw at issue is equipped with a guard that is supposed to close in the event of a kickback. Plaintiff had checked the guard earlier that day and it appeared to be working properly. Plaintiff admitted during his deposition that the accident occurred in a "split second," such that he did not see whether the guard in fact did not close as it normally would. Plaintiff further testified that in his experience kickbacks may be caused by use of dull blades. Final-

ly, plaintiff said he recalled the saw was covered with dirt on the date of the accident, and that he did not know how long it had been since the saw had last been subject to maintenance prior to the accident.

### C. *Strict Liability Claim*

Plaintiff's claim of strict liability is a claim under the doctrine enunciated in Section 402A of the Restatement (Second) of Torts. As plaintiff correctly points out, under Pennsylvania law, a party claiming liability for a defective product need not prove the existence of a defect through direct evidence, but instead may prove the "malfunction" of the product circumstantially. *See Rogers v. Johnson & Johnson Products, Inc.*, 523 Pa. 176, 565 A.2d 751, 754–55 (1989). This malfunction theory "permits a plaintiff to prove a defect in a product with evidence of the occurrence of a malfunction and with evidence eliminating abnormal use or reasonable, secondary causes for the malfunction." *Rogers*, 565 A.2d at 754. Thus plaintiff's claim for strict liability may survive the present Motion if plaintiff showed a malfunction and "presented a case-in-chief free of secondary causes." *Rogers*, 565 A.2d at 755. The Court does not interpret this Pennsylvania rule, however, to mean that in plaintiff's case-in-chief, plaintiff must negate every theoretically conceivable secondary cause for the malfunction. Rather, once he has shown a malfunction to have occurred, the plaintiff fails to establish a prima facie case only if the plaintiff does not negate evidence of other reasonable, secondary causes or abnormal use that is actually introduced during plaintiff's case-in-chief. In other words, the plaintiff fails to establish a prima facie case if, based upon his own proof, more than one cause could account for the accident.

In this action, plaintiff is proceeding under the malfunction theory, as there has been no direct evidence of a defect. Plaintiff did not offer any expert testimony; the saw was neither examined pretrial nor introduced at trial; and plaintiff himself did not observe what the guard did or did not do in the instant that the accident occurred.[2] Viewing

---

**2.** The Pennsylvania Superior Court has noted in a case with some, but not all, similar facts as the

the evidence in the light most favorable to plaintiff and giving him the advantage of every fair and reasonable inference, the Court concludes that a jury could find evidence of a malfunction, based on plaintiff's testimony that the saw performed in an abnormal way leading to his injury.

■ However, such showing is insufficient for plaintiff to carry his burden to establish a prima facie case under the malfunction theory. As discussed above, plaintiff's case-in-chief must also have been free of secondary causes or abnormal use which could account for the accident. Based on plaintiff's own evidence, there is at least one secondary cause which could account for the accident. Specifically, there was evidence in plaintiff's case-in-chief of wear and tear of the saw. Plaintiff testified that he had used the saw for five or six months prior to the time of the accident, at a rate of about four to five times a week, that the blade that he had attached to the saw shortly before the accident was not new, and that dull blades may be a cause of kickbacks. Also, plaintiff stated that the saw was dirty at the time and that he did not know how long it had been since it had been cleaned. The Court determines that because plaintiff did not negate the evidence pointing to a reasonable, secondary cause for the accident, i.e., wear and tear, plaintiff failed to establish a prima facie case. *Rogers,* 565 A.2d at 755.

■ Defendant also argues that plaintiff should not be permitted to present his case to the jury because he failed to offer expert testimony of how the accident occurred. It is true that expert testimony is needed where the subject is beyond the purview of the ordinary lay jury's experience and knowledge. *See, e.g., Papandrea v. Hartman,* 352 Pa.Super. 163, 507 A.2d 822, 827–28 (1986). The question is whether in this case any of the elements of plaintiff's claims would require the assistance of an expert to avoid jury speculation and conjecture. Plaintiff contends that under the Pennsylvania Superior Court's decision in *Agostino v. Rockwell Manufacturing Co.,* 236 Pa.Super. 434, 345

A.2d 735 (1975), the evidence of malfunction alone is sufficient to submit the case to the jury, even in the absence of expert testimony. Although *Agostino* may indeed support the proposition that there is no *per se* rule requiring expert testimony before a malfunction case may be submitted to the jury, *Agostino* itself was specifically premised on the lack of any evidence of abnormal use or secondary causes. *See Agostino,* 345 A.2d at 740. As such, *Agostino* is distinguishable from the present case. Here, there has been evidence of at least one reasonable, secondary cause, wear and tear, and therefore plaintiff must offer more than in *Agostino* in order to get his case to the jury. In the absence of expert guidance, the jury in this case would be left to guess whether wear and tear or a defect caused the accident.

■ Defendant also claims that the case cannot get to the jury because plaintiff did not establish that the saw was a new product. In *Agostino,* the Superior Court distinguished between cases in which an alleged defect manifests itself shortly after purchase and cases in which an alleged defect does not manifest itself until after some period of ordinary wear and tear. *Agostino* represented the former type of case, as the product was "new" (only a month old at the time of the accident), had been used approximately ten times, had only been used by the plaintiff, and had never been sent out to a repair shop. *See Agostino,* 345 A.2d at 740–41. By way of contrast, the *Agostino* court pointed to the earlier Pennsylvania case of *Stein v. General Motors Corp.,* 58 Pa.D. & C.2d 193 (Ct. C.P. Bucks County), *aff'd,* 222 Pa.Super. 751, 295 A.2d 111 (1972), wherein compulsory nonsuit was granted and affirmed in an action for alleged defect of a car that was 26 months old at the time of the accident, that had been driven over 17,000 miles, and that had at least one trip to the repair shop. *See Agostino,* 345 A.2d at 740. The *Agostino* court observed that the court in *Stein* had recognized that more often than not, where a product is new, the party injured, "along with an objective observer," would have reason to

case at bar, that "it would be most unreasonable to bar recovery because [plaintiff] did not observe the location of the guard at the moment his

leg was being lacerated." *Agostino v. Rockwell Mfg. Co.,* 236 Pa.Super. 434, 345 A.2d 735, 741 (1975).

believe that there was a defect at the time of sale. *Agostino,* 345 A.2d at 740 (quoting *Stein,* 58 Pa.D. & C.2d at 206). Significantly for purposes of the present case, the *Agostino* court stated, "This case [*Agostino* ], therefore, is not like *Stein,* where ordinary wear and tear or faulty repair could have caused the defect." *Agostino,* 345 A.2d at 741. In sum, the age of the saw does not bar recovery, but instead may be considered as evidence of ordinary wear and tear over time.

Therefore, as to the strict liability count, judgment as a matter of law is appropriate at this time.[3]

### D. *Negligence Claim*

■ In addition to plaintiff's claim for strict liability, plaintiff asserted a claim for negligence. The elements of a claim of negligence are the existence of a legal duty, a breach of that duty, and a causal connection between the breach and the resulting injury, in addition to actual damage. *See Griggs v. BIC Corp.,* 981 F.2d 1429, 1434 (3d Cir.1992). However, plaintiff failed to present any evidence at trial which would allow a jury to find reasonably in plaintiff's favor on this count. Consequently defendant is entitled to judgment as a matter of law on the negligence count.

### E. *Breach of Warranty Claim*

■ Judgment as a matter of law is also appropriate on plaintiff's breach of warranty count. Plaintiff explicitly abandoned his claim of breach of express warranty during the course of oral argument over defendant's Rule 50(a) Motion. Plaintiff instead is proceeding on the claim of breach of an implied warranty of fitness for a particular purpose. Under the Pennsylvania Uniform Commercial Code, 13 Pa.C.S.A. § 2315, such a warranty exists when a "seller at the time of contracting has reason to know: (1) any particular purpose for which the goods are required; and (2) that the buyer is relying on the skill or judgment of the seller to select or furnish suitable goods." 13 Pa.C.S.A. § 2315; *see also Altronics of Bethlehem, Inc. v. Repco, Inc.,* 957 F.2d 1102, 1105 (3d Cir. 1992). Assuming, *arguendo,* that plaintiff has standing as a "buyer" of the saw at issue,[4] he has failed to present sufficient evidence of the statutory elements under the Code for his claim of implied warranty. Moreover, even if he had generally satisfied the statutory elements, plaintiff has failed to prove any defect, which is a predicate for a claim of breach of implied warranty. *See Altronics,* 957 F.2d at 1105; *see also Walker v. General Elec. Co.,* 968 F.2d 116, 119–20 (1st Cir.1992) (discussing Third Circuit application of Pennsylvania malfunction law and affirming district court's granting of defendant's Rule 50(a) motion, where even with expert testimony, plaintiff's case-in-chief failed to negate evidence of wear as a reasonable, secondary cause for alleged malfunction of toaster-oven).[5]

---

3. Defendant had additionally argued that because the saw had either been lost, disposed of, or destroyed by plaintiff's employer, plaintiff should not be permitted to pursue his claims because of the prejudice to defendant in its resulting inability to inspect the tool for evidence of defect, misuse, or secondary causes. In light of the Court's ruling, I need not reach this issue, and will not do so. I do observe that in Judge Robert Kelly's unpublished opinion in *Martin v. Volkswagen of Am., Inc.,* Civil Action No. 88–8261, 1989 WL 81296 (E.D.Pa. July 13, 1989), the Court, in granting summary judgment for defendant, did take into account that the product at issue, a car, had been disposed of by the individual plaintiff's employer. Although the employer was also a plaintiff in the action, the Court apparently attached no significance to the fact that the employer owned the car and thus had control over it, but that the individual plaintiff/employee did not. The Court did, however, believe it significant that the individual plain-

tiff/employee never asked the employer to retain the car, and that neither of the plaintiffs had the car examined by an expert. *See id.,* at *1. I add a note of caution, however, as the *Martin* decision was based in part upon the Pennsylvania Superior Court's decision in *Rogers v. Johnson & Johnson Products, Inc.,* 368 Pa.Super. 109, 533 A.2d 739 (1987), which subsequently was reversed by the Pennsylvania Supreme Court in the decision discussed in ·this memorandum.

4. *See Salvador v. Atlantic Steel Boiler Co.,* 457 Pa. 24, 319 A.2d 903 (1974).

5. During oral argument on defendant's Motion, plaintiff suggested he was proceeding on a claim of breach of an implied warranty of fitness for a particular purpose. However, to the extent that he also claims a breach of an implied warranty of merchantability, 13 Pa.C.S.A. § 2314, such a claim similarly requires proof of defect. *See*

## II. CONCLUSION

Defendant's Rule 50(a) Motion for judgment as a matter of law on all counts of the Complaint is granted. The jury is discharged from duty. I will enter a written Order of Judgment promptly, and the parties will have ten days from the entry of judgment to file any post-trial motions.

AND IT IS SO ORDERED.

*Altronics,* 957 F.2d at 1105. Because plaintiff has failed to prove any defect, defendant is entitled to judgment as a matter of law under both theories of implied warranty.